No. 22-___

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE GOOGLE LLC,
*Petitioner*

On Petition for a Writ of Mandamus to the
United States District Court for the Western District of Texas,
No. 6:21-cv-00259-ADA
Hon. Alan D. Albright

## GOOGLE LLC'S
## PETITION FOR WRIT OF MANDAMUS

Darin W. Snyder
David S. Almeling
Mark Liang
Daniel A. Silverman
O'MELVENY & MYERS LLP
Two Embarcadero Center,
28th Floor
San Francisco, CA  94111-3823
Telephone:  (415) 984-8700

Bradley N. Garcia
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006-4061
Telephone:  (202) 383-5300

*Counsel for Petitioner Google LLC*

October 15, 2021

# CERTIFICATE OF INTEREST

I certify that the following information is accurate and complete to the best of my knowledge.

Dated:  October 15, 2021          */s/ Bradley N. Garcia*            
                                  Bradley N. Garcia

| 1. Represented Entities | 2. Real Parties in Interest | 3. Parent Corporations and Stockholders |
|---|---|---|
| Google LLC | | XXVI Holdings Inc. Alphabet Inc. |

| 4. Legal Representatives | | |
|---|---|---|
| Amy K. Liang | Luann L. Simmons | G. Blake Thompson |
| J. Mark Mann | Mann Tindel Thompson | Sorin G. Zaharia |

| 5. Related Cases |
|---|
| Google is unaware of any case pending in this Court or any other court or agency that will directly affect or be directly affected by this Court's decision in this writ proceeding. |

| 6. Organizational Victims and Bankruptcy Cases |
|---|
| Not Applicable |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF RELATED CASES ................................................. vii

INTRODUCTION .............................................................................. 1

RELIEF SOUGHT .............................................................................. 3

ISSUE PRESENTED .......................................................................... 3

STATEMENT OF FACTS .................................................................. 3

I.      The Parties And Plaintiffs' Claims ........................................... 3

II.     SIT's Initial Suit In The Wrong District .................................. 5

III.    The Relevant Witnesses and Evidence ..................................... 6

        A.      Google's Witnesses and Evidence Are In The NDCA ....... 6

        B.      SIT's Key Witnesses and Evidence Are Also In California .............. 7

        C.      Key Third-Party Witnesses and Evidence Are In The NDCA or Elsewhere In California ............................................. 8

IV.     Petitioner's Motion To Transfer And The District Court's Ruling ............. 10

STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE ................... 11

I.      Governing Legal Standards ..................................................... 11

II.     This Court's Precedents Require Transfer ............................... 13

        A.      The Private Interest Factors Favor Transfer ...................... 13

                1.      Many relevant witnesses are located in the NDCA, with no witness in the WDTX ................................. 13

                2.      Compulsory process for relevant witnesses is available in the NDCA, and not in the WDTX. ................. 20

                3.      Sources of proof are more readily accessible in the NDCA than the WDTX. ................................... 23

                4.      The district court clearly erred in determining that judicial economy considerations weighed against transfer. ............................................................ 26

# TABLE OF CONTENTS
### (continued)

**Page**

B.    The Public Interest Factors Favor Transfer.........................................27

    1.    NDCA's local interest in the case weighs heavily in favor of transfer. ....................................................................................27

    2.    The district court gave too much weight to the court congestion factor, which does not counsel against transfer in any event.................................................................29

C.    The NDCA Is Clearly More Convenient Than The WDTX..............31

CONCLUSION ...................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
  358 F.3d 337 (5th Cir. 2004) ...............................................................12

*Groupchatter, LLC v. Itron, Inc.*,
  No. 6:15-CV-900 JRG-JDL, 2016 WL 2758480 (E.D. Tex. May 12,
  2016) ......................................................................................................19

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ..........................................................23

*In re Apple Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ......................................................19

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ....................................... 20, 28, 30, 31

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ................................................. passim

*In re Google LLC*,
  2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ............................ passim

*In re Google LLC*,
  2021 WL 4592280 (Fed. Cir. Oct. 6, 2021)................................. passim

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) ............................................................5

*In re Hoffmann-La Roche*,
  587 F.3d 1333 (Fed. Cir. 2009) ....................................... 25, 27, 28, 32

*In re HP Inc.*,
  No. 18-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018)......... 18, 22

*In re Hulu, LLC*,
  2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ........................... 2, 16, 22

*In re Juniper Networks, Inc.*,
  -- F.4th --, 2021 WL 4343309 (Fed. Cir. Sept. 24, 2021) .......... passim

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ...........................................................12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re NetScout Sys.*,
  2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)................................................ passim

*In re Pandora Media, LLC*,
  2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)..................................... 2, 16, 17, 22

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ...............................................................26

*In re Samsung Elecs. Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) ................................................... passim

*In re TracFone Wireless, Inc.*,
  852 F. App'x 537 (Fed. Cir. 2021) ........................................ 12, 13, 28

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ...........................................................11

*In re Uber Techs., Inc.*,
  852 F. App'x 542 (Fed. Cir. 2021) ...........................................................2

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011) ...........................................................25

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...............................................................15

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................... passim

*In re WMS Gaming Inc.*,
  564 F. App'x 579 (Fed. Cir. 2014) ...........................................................31

*In re Zimmer Holdings*,
  609 F.3d 1378 (Fed. Cir. 2010) ...........................................................25

*InfoGation Corp. v. Google LLC*,
  No. 6:20-cv-00366-ADA (W.D. Tex. Apr. 29, 2021) .........................................19

*SITO Mobile R&D IP v. Hulu, LLC*,
  No. 6-20-CV-00472-ADA, 2021 WL 1166772 (W.D. Tex. Mar. 24,
  2021), *vacated on other grounds*, *Hulu*, 2021 WL 3278194...............................30

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

## STATUTES

28 U.S.C. § 1400(b) ............................................................................ 12, 28

28 U.S.C. § 1404(a) ................................................................................ passim

## OTHER AUTHORITIES

Unified Patents:  2021 Patent Dispute Report (July 1, 2021), available
    at https://www.unifiedpatents.com/insights/q2-2021-patent-dispute-
    report. ....................................................................................................30

## RULES

Fed. R. Civ. P. 45(c)(1) ............................................................................21

## STATEMENT OF RELATED CASES

This Court previously granted a petition for a writ of mandamus and ordered a prior version of this case filed in the U.S. District Court for the Eastern District of Texas to be dismissed or transferred for lack of venue. *See In re: Google LLC*, No. 19-126, 949 F.3d 1338 (Feb. 13, 2020) (Judges Dyk, Wallach, and Taranto).

Apart from the underlying district court case, Google is unaware of any case pending in this Court or any other court or agency that will directly affect or be directly affected by this Court's decision in this writ proceeding.

# INTRODUCTION

Plaintiff-Respondent Super Interconnect Technologies LLC ("SIT") has waged an ongoing, years-long campaign to sue Petitioner-Defendant Google LLC ("Google") in the wrong forums.  This Court has already granted a writ of mandamus in connection with the allegations at issue, ruling that the Eastern District of Texas ("EDTX") was an improper venue for a prior incarnation of this lawsuit.  Discovery in that EDTX action confirmed that California is the center of gravity of this case.  Nevertheless, when that action was dismissed at this Court's direction, SIT chose to refile its suit, one day later, next door in the Western District of Texas ("WDTX")—a forum that also lacks any connection to SIT's claims.

Google promptly moved to transfer the suit to the clearly more convenient Northern District of California ("NDCA"), emphasizing that—as the completed fact discovery in the EDTX action confirmed—at least eleven key witnesses and all of the relevant evidence are located in the NDCA or elsewhere in California. By contrast, not a *single* relevant document or witness—for either party—is located in the WDTX.  Other key factors likewise weigh strongly in favor of transfer:  only the NDCA can exercise subpoena power over relevant third-party witnesses, and only the NDCA has a bona fide local interest in the litigation.

The district court nevertheless denied the motion.  The court's order did not turn on any disputed factual issues.  Instead, it recited several legal rationales from its own prior opinions that this Court has—recently and repeatedly—explained are incorrect.  Among its many legal errors, the district court:  refused to consider the convenience of party witnesses; assumed with no basis that few party witnesses and even fewer non-party witnesses would testify at trial; demanded, in weighing the availability of compulsory process, that Google make a showing of unwillingness to testify as to each witness; discounted the location of documents because of their electronic availability; and relied on Google's generalized presence in the WDTX in evaluating the comparative local interests of the two districts.  As this petition details, this Court has expressly repudiated each of those positions in granting mandamus relief and ordering cases transferred out of the WDTX.  *See, e.g.*, *In re NetScout Sys.*, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021); *In re Pandora Media, LLC*, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021); *In re Google LLC*, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ("*Jenam*"); *In re Google LLC*, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ("*Sonos*"); *In re Juniper Networks, Inc.*, -- F.4th --, 2021 WL 4343309, at *7 (Fed. Cir. Sept. 24, 2021); *In re Hulu, LLC*, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021); *In re Uber Techs., Inc.*, 852 F. App'x 542, 544 (Fed. Cir. 2021); *In re Samsung Elecs. Co.*, 2 F.4th 1371 (Fed. Cir. 2021).

This case is yet another "very close cousin" of those decisions and, accordingly, the "disposition of this case is largely dictated by the disposition of those cases." *Juniper*, 2021 WL 4343309, at *7.  As in those cases, mandamus relief is warranted because "several of the most important factors bearing on the transfer decision in this case strongly favor the transferee court, and no factor favors retaining the case in the transferor court." *Id.*

## RELIEF SOUGHT

Google respectfully petitions for a writ of mandamus directing the district court to vacate its September 15, 2021 order denying transfer of this action and to transfer this action to the NDCA.

## ISSUE PRESENTED

Whether the district court clearly abused its discretion by denying Google's motion to transfer where the most important factors—the convenience of witnesses, the availability of compulsory process, sources of proof, and local interest—clearly favor the NDCA, no factor weighs against transfer, and the district court's contrary determination was based on flawed legal propositions that have been repeatedly rejected by this Court.

## STATEMENT OF FACTS

### I.    The Parties And Plaintiffs' Claims

Google is headquartered in Mountain View, California, in the NDCA. Appx168 ¶ 3.  Google's Mountain View headquarters serves as the strategic center

of its business. *Id.* The majority of its U.S. workforce, including engineers, product managers, marketers, executives, and staff, are employed at Google's offices in the NDCA. *Id.*

SIT, the Plaintiff, is a patent assertion entity with no relevant ties to the WDTX. Although SIT represents that it was "formed in the [WDTX] in Austin, Texas" and maintains a registered address there, Appx401 n.3, its representatives confirmed that since at least late 2019—well before this suit was filed in March 2021—SIT has maintained only a single office located in Frisco, Texas, in the EDTX. Appx290; *see also* Appx139-41, Appx151-52. Moreover, SIT is a patent-holding subsidiary controlled by California-based parent entities Acacia Research Group and Acacia Research Corp., which are both headquartered in Orange County, California. Appx89, Appx147-48, Appx292-95. Acacia Research Group holds itself out as an "industry leader in patent licensing." Appx297. All of SIT's employees are also employed by the Acacia companies and receive their paychecks from Acacia. Appx142, Appx158.

SIT's lawsuit asserts U.S. Patent Nos. 7,627,044, 6,463,092, and 7,158,593 (the "Patents-in-Suit") against certain Google Pixel smartphones (the "Pixel Products"). SIT alleges that the Pixel Products infringe each Patent-in-Suit based on their purported compliance with the Universal Flash Storage ("UFS") and M-PHY technology standards. Appx10-29 ¶¶ 12, 15-17, 28, 31-33, 44, 47-49.

Non-party Qualcomm supplies the processor component in each of the Pixel Products that purportedly implements the accused UFS and M-PHY standards. Appx272-85. Qualcomm is a Delaware corporation headquartered in San Diego, California, where it maintains a large office and R&D space. Appx124, Appx319-25.

## II.    SIT's Initial Suit In The Wrong District

On November 2, 2018, SIT filed a lawsuit against Google in the EDTX (the "EDTX Action") asserting the same Patents-in-Suit against the same Pixel Products. *See Super Interconnect Techs. LLC v. Google LLC*, No. 2:18-cv-00463 (E.D. Tex.) (consolidated with *Super Interconnect Techs. LLC v. Huawei Device Co., Ltd.*, No. 2:18-cv-00462 (E.D. Tex.) for pretrial issues). Google filed a Rule 12(b)(3) motion to dismiss for improper venue, which the EDTX court denied. Appx172-92. On February 13, 2020, this Court granted Google's petition for a writ of mandamus and ordered the EDTX to dismiss or transfer the case. *In re Google LLC*, 949 F.3d 1338, 1339 (Fed. Cir. 2020). Following that ruling, the EDTX stayed the case on February 18, 2020. Appx194-95.

Before the stay, the parties had: (1) completed claim construction and received a *Markman* order from the EDTX court; (2) completed fact discovery, including depositions of party and non-party witnesses; and (3) proceeded partway

through expert discovery, having served opening expert reports.  Appx111 ¶¶ 6-7,
Appx197-231.

On March 12, 2021, in accordance with this Court's order, the EDTX
dismissed the case.  Appx233-36.  The next business day—rather than bringing its
lawsuit in a forum with any meaningful ties to its lawsuit—SIT went next door,
refiling a substantively identical complaint in the WDTX.  Appx10-29, Appx238-
69.

## III.   The Relevant Witnesses and Evidence

Because the case had progressed so far in the EDTX prior to this Court's
ruling that venue was improper in that court, the contours of this action—including
the key witnesses and evidence—are already well-defined.  Discovery in the
EDTX has made clear that essentially all relevant evidence regarding the Patents-
in-Suit and the accused Pixel Products is in the NDCA or elsewhere in California,
and that no relevant witnesses or evidence are in the WDTX.

### A.    Google's Witnesses and Evidence Are In The NDCA

The Google employees who have relevant technical, financial, and
marketing knowledge about the accused Pixel Products are located in the NDCA,
where they work from Google's Mountain View headquarters.  Appx168-69.
Those five witnesses, each of whom was deposed as a Google Rule 30(b)(6)
corporate witness in the EDTX Action, are identified in the chart below:

| Google Witness | Job Title | Relevant Knowledge |
|---|---|---|
| Madhav Chitlu | Memory commodity and supply manager | Google's business relationship with memory and storage component suppliers for the accused Pixel Products |
| Michael Diamond | Hardware engineer, engineering manager for Pixel system integration team | Circuit board design and accused UFS interfaces in the Pixel Products |
| Nick Yoswa | Senior finance analyst | Financial data, statements, accounting, and records for the Pixel Products |
| Abhijit Ravi | Head of Pixel Product Marketing | Google's marketing, promotion, and business information regarding the accused Pixel Products |
| James Maccoun | Patent counsel | Google's patent license agreements and licensing practices |

Appx169-70 ¶¶ 6-11, Appx112 ¶¶ 11-16, Appx118-33.  A sixth witness who was also deposed as a corporate witness, Harleen Juneja, is no longer employed at Google but remains in the NDCA.  Appx112-13 ¶¶ 17-18, Appx135-36.

Like the witnesses, all the relevant technical, financial, and marketing documents relating to the Pixel Products are located in the NDCA, with none in the WDTX.  *See* Appx170 ¶¶ 12-13.  Although Google has offices in Austin, no Google employees in Austin—or anywhere else in Texas—are knowledgeable about technical, financial, or marketing issues for the accused Pixel Products.  *Id.*

## B.     SIT's Key Witnesses and Evidence Are Also In California

SIT has referenced only three employees total:  Marc Booth, Eric Lucas, and Holly Hernandez.  Appx153.  Both of SIT's top executives, Mr. Booth and Mr.

Lucas, were designated by SIT in the EDTX Action as its corporate witnesses on most of Google's Rule 30(b)(6) topics and were deposed in Orange County, California, where both live and work.  Appx145, Appx155, Appx160.  Mr. Booth, in addition to serving as the CEO of SIT, is the President and CEO of Acacia Research Group and the Chief IP Officer of Acacia Research Corporation, and resides in Newport Beach in Orange County.  Appx149, Appx295, Appx301-08.  Mr. Lucas, who is the President of SIT as well as the Senior Vice President of Acacia Research Group, resides in Laguna Beach, also in Orange County.  Appx310-17, Appx156-57.

Ms. Hernandez is no longer employed at SIT or Acacia.  She was previously SIT's Director and Senior Vice President and currently resides in Frisco, Texas, in the EDTX.  Appx399.

Because SIT is controlled by its California-based Acacia parent entities, *see supra* at 4, to the extent SIT has relevant documentary evidence, that evidence is likely also located in California alongside SIT's Orange County-based officers, Mr. Booth and Mr. Lucas.

## C.     Key Third-Party Witnesses and Evidence Are In The NDCA or Elsewhere In California

As noted above, non-party supplier Qualcomm is headquartered in San Diego, California.  During fact discovery in the EDTX Action, Qualcomm made its

source code for the accused functionality available for physical inspection at ProSearch, an e-discovery firm located in Los Angeles, California.  Appx162.

Two of the named inventors of the Patents-in-Suit, Gyudong Kim and Min-Kyu Kim, live in the NDCA and were deposed there during the EDTX Action. Appx164-66, Appx327-33.  Both currently work for Analog Devices, Inc. in the San Francisco Bay Area, in the NDCA.  *Id.*  Gyudong Kim is the first-named inventor on all three Patents-in-Suit.  Appx31, Appx45, Appx72.

The previous assignees of the patents are also based in the NDCA or elsewhere on the West Coast.  The patents were originally assigned to Silicon Image, Inc., which was located in Sunnyvale, California, in the NDCA, before it was acquired in 2016 by Lattice Semiconductor ("Lattice").  Appx31, Appx45, Appx72, Appx335-38.  Lattice is headquartered in Hillsboro, Oregon, and maintains a Development Center in San Jose, California.  Appx340-41.  In response to a subpoena in the EDTX Action, Lattice produced patent and invention-related documents originating from Silicon Image.  Appx335-38, Appx343-54.  Lattice also produced a declaration from Jaime Garcia, a former Silicon Image (and now Lattice) employee located in San Jose in the NDCA, authenticating and providing business record foundation for the documents. Appx335-38.

**IV.    Petitioner's Motion To Transfer And The District Court's Ruling**

In light of this action's numerous ties to the NDCA and the inconvenience of litigating in the WDTX, Google moved under 28 U.S.C. § 1404(a) to transfer the suit to the NDCA. Appx91-109. Google filed the motion on April 27, 2021, less than one and a half months after SIT initiated the WDTX suit. *Id.* Google's motion emphasized, among other things, that every relevant document and many potential witnesses are located in the NDCA, while none is located in the WDTX. *See id.*

The district court nevertheless denied the motion. The court reasoned that (1) principles of judicial economy weighed against transfer because the parties had agreed to reuse discovery and accept the claim constructions from the EDTX in the WDTX action, without considering that an identical stipulation could be entered in the NDCA, Appx505; and (2) "the administrative difficulties flowing from court congestion" weighed against transfer based on the court's belief that the time to trial would be faster in the WDTX than in the NDCA, Appx506-07. The court deemed every other factor in the transfer analysis neutral by, among other things:

- discounting the convenience of Google's party witnesses, all of whom reside in the NDCA, Appx503;

- insisting that Google was required to identify witnesses who would be called at trial and provide evidence of unwillingness as to its potential

witnesses, Appx502;

- assuming that "few party witnesses" and "even fewer third-party witnesses, if any" would testify at trial, Appx504;

- relying on the fact that discovery in the EDTX was electronic, Appx501;

- and relying on Google's generalized presence in the WDTX as the basis for a purported "local interest" by that district in this litigation, Appx505.

### STATEMENT OF REASONS WHY THE WRIT SHOULD ISSUE

Google seeks a writ of mandamus to correct the district court's clear abuse of discretion in denying transfer. Google amply satisfied its burden to show that the NDCA is clearly the more convenient forum for this litigation, and the district court abused its discretion by disregarding numerous recent precedents of this Court to discount the evidence and factors weighing in favor of transfer.

## I.    Governing Legal Standards

Fifth Circuit law applies to this Court's review of § 1404(a) rulings. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Under Fifth Circuit law, a petitioner seeking mandamus relief must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief [it] desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re*

*Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("*Volkswagen II*") (en banc) (citation omitted). "In transfer cases, those requirements generally coalesce into one inquiry: whether the district court's denial of transfer amounted to a clear abuse of discretion under governing legal standards." *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 538 (Fed. Cir. 2021).

The § 1404(a) analysis proceeds in two steps. First, the court asks whether the "action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312 (quoting 28 U.S.C. § 1404(a)). The district court correctly determined, and SIT did not dispute, that this case could have been filed in the NDCA, where Google is headquartered. Appx500; 28 U.S.C. § 1400(b).

Second, a court must assess whether transfer is warranted based on "the convenience of parties and witnesses" and "the proper administration of justice." *In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011). This determination "turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quotation omitted). The public

factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

Although district courts have discretion in balancing these factors, that discretion is bounded by legal principles, and this Court has routinely granted mandamus petitions and ordered the transfer of cases out of the WDTX where, as here, the district court's denial of transfer amounted to a "clear abuse of discretion" under governing legal standards. *See supra* at 2 (collecting cases).

## II.    This Court's Precedents Require Transfer

The district court's transfer denial rests on multiple clear legal errors, including several rationales this Court has recently and repeatedly rejected. A writ is warranted to correct the "patently erroneous result" of the district court's flawed reasoning. *Tracfone*, 852 F. App'x at 540.

### A.    The Private Interest Factors Favor Transfer

#### 1.    Many relevant witnesses are located in the NDCA, with no witness in the WDTX.

The convenience and cost for witnesses to travel and attend trial is "probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). This critical factor weighs heavily in favor

of transfer. Numerous witnesses reside in the NDCA, with additional witnesses located nearby in California; on the other side of the ledger, and with fact discovery now complete, SIT has not identified a *single* witness in the WDTX.

As set forth above, *see supra* at 6-9, many witnesses are located in the NDCA and can conveniently testify "at home" in that district. *Volkswagen II*, 545 F.3d at 317. Those witnesses include five Google employees familiar with the relevant aspects of the accused products; an additional ex-Google employee with relevant knowledge; and, to the extent they are willing to testify, two of the inventors of the Patents-in-Suit and Lattice employee Mr. Garcia. Two additional key witnesses—both of SIT's top executives, Mr. Lucas and Mr. Booth—reside nearby in Orange County, California. To the extent Qualcomm witnesses from its headquarters are willing to testify, they too are close by in San Diego.

The NDCA is far more convenient for each of these witnesses. There is no direct flight from the Bay Area to Waco; traveling from the NDCA to Waco requires at least five hours of flight time, with a layover in Dallas. Appx115 ¶ 38, Appx356-57). The long trips and overnight stays in Waco would lead to lost productivity and disruption to the witnesses' lives while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. By contrast, if this case were transferred to the NDCA, Google employees could easily commute back and forth between court and their homes instead of traveling "five or six hours one-

way" to Waco.  *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)

("*Volkswagen I*").  The other California witnesses identified above would likewise

benefit from a closer and more convenient venue if this action were transferred to

the NDCA.  The flight time from Orange County or San Diego to Waco is around

five hours, with no direct flights; by contrast, abundant one-and-a-half-hour

nonstop flights allow for daytrips to the NDCA from Orange County or San Diego.

*See* Appx116 ¶¶ 40-42, Appx359-70.

In the face of this overwhelming majority of witnesses located conveniently

in or near the NDCA, SIT identified only one Texas witness:  a former employee,

Ms. Hernandez, who resides in Frisco—outside the WDTX.  Ms. Hernandez has

limited relevant knowledge relative to SIT's two top officers, Mr. Booth and Mr.

Lucas.  *See supra* at 7-8.  In any event, even Ms. Hernandez "would have close to a

two-hour drive to travel from [her] home in Frisco, Texas, to the courthouse in

Waco."  *Jenam*, 2021 WL 4592280, at *4.

Because numerous potential witnesses are located in the NDCA, additional

witnesses are located near the NDCA, and *zero* witnesses are located in the

WDTX, this factor unambiguously—and strongly—favors transfer.  *See, e.g.*,

*Genentech*, 566 F.3d at 1344-45 (where a "substantial number of material

witnesses reside within the transferee venue and the state of California, and no

witnesses reside in the [transferor forum]," the district court "clearly erred" in

failing to find that this factor weighed "substantially in favor of transfer"); *see also, e.g.*, *Jenam*, 2021 WL 4592280, at *5 (collecting cases).

The district court did not find any contrary facts. Instead, in deeming this factor neutral, the district court resurrected numerous legal rationales that this Court has already rejected.

First, the district court refused to consider the convenience of party witnesses. Citing its own prior decisions, the district court stated that it gives "little weight" to party witness convenience and, indeed, it ultimately excluded those witnesses from its convenience analysis. Appx502-03. But this Court has made clear, over and over again, that the district court "*must consider*" the convenience of "possible party witnesses," *Samsung*, 2 F.4th at 1379 (emphasis added); *see also Pandora*, 2021 WL 4772805, at *3-4; *NetScout*, 2021 WL 4771756, at *3. Reaffirming its prior holdings, this Court explained in *Jenam* that "the fact that a witness is affiliated with a party 'does not negate the inconvenience and cost to those individuals to travel a significant distance to testify." *Jenam*, 2021 WL 4592280, at *4 (quoting *Sonos*, 2021 WL 4427899, at *4, and collecting cases). Accordingly, this Court has consistently "rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them." *Juniper*, 2021 WL 4343309, at *4; *see also Hulu*, 2021 WL 3278194, at *5. Had the

16

district court not impermissibly cast aside the party witnesses located in the NDCA and elsewhere in California, it would have necessarily concluded that this factor weighed strongly in favor of transfer.

Further still, the convenience of non-party witnesses alone would warrant a finding in favor of transfer on this factor, given that two inventors and a Lattice employee are located in the NDCA, Qualcomm employees are located in San Diego, and no non-party witnesses are located in the WDTX. *See supra* at 8-9. Yet the district court refused to consider that imbalance in favor of NDCA, instead assuming with no basis "that no more than a few party witnesses and even fewer third party witnesses, if any, will testify live at trial." Appx504. This rationale for turning a blind eye to witness convenience has also been rejected by this Court on multiple occasions—as to both party and non-party witnesses. Most recently, in *Pandora*, this Court explained that it has "rejected the district court's categorical assumption that defendants are unlikely to call more than a few, if any, of the proposed party witnesses who are identified in support of a motion to transfer." 2021 WL 4772805, at *4; *see also NetScout*, 2021 WL 4771756, at *3 (same); *Jenam*, 2021 WL 4592280, at *4 (same); *Juniper*, 2021 WL 4343309, at *4 (finding error where "[t]he court's assumption that Juniper would not call many party witnesses was not based on any evidence specific to this case"). And in *Samsung*, this Court applied the same rationale to non-party witnesses: in that

17

case, the district court "erroneously discounted the convenience of third-party witnesses by presuming that 'only a few . . . non-party witnesses will likely testify at trial.'" 2 F.4th at 1379.  Indeed, the district court's rationale is even more misplaced here than in the typical case, given that the progression of discovery in the EDTX Action has equipped Google with a well-developed, non-speculative basis for identifying key witnesses at this stage.

To the extent that the district court relied on the fact that some "witnesses have already been deposed in the EDTX action" and Google had not "indicated why the deposition testimony is insufficient," Appx504, that too was error:  live testimony is often more compelling than taped testimony or transcripts read into the record, and this Court has explained that a party is "not required" to "affirmatively indicate that it would call" specified witnesses or set forth "the nature of the testimony they would give." *In re HP Inc*., No. 18-149, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018) (citing *Volkswagen II*, 545 F.3d at 317 n.12).

The district court's errors did not stop there.  The court was also mistaken in giving undue weight to Ms. Hernandez's location in Frisco, outside the WDTX. *See Jenam*, 2021 WL 4592280, at *4 (finding this factor weighed in favor of transfer where, as here, "even" the only "identified . . . witness who would be more inconvenienced by having to travel to California instead of Waco to testify" did

"not live in the [WDTX] and would have close to a two-hour drive to travel from his home in Frisco, Texas, to the courthouse in Waco").  Furthermore, the district court improperly viewed the evidence on convenience as "point[ing] in both directions" on the basis of self-serving statements by SIT's California-based employees Mr. Lucas and Mr. Booth that they would find testifying in the WDTX to be convenient.  Appx503.  This Court has recognized that "it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home." *In re Apple Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).  A party's willingness to undertake that cost does not change the calculus, and certainly cannot render the WDTX *more* convenient than the closer forum, even looking myopically at only those witnesses. *See Groupchatter, LLC v. Itron, Inc.*, No. 6:15-CV-900 JRG-JDL, 2016 WL 2758480, at *4 (E.D. Tex. May 12, 2016) (giving "little weight" to "the willingness of . . . witnesses to travel to Texas" because "the fact remains" that they were located in the transferee district).  Indeed, the district court has previously recognized as much in another case. *See InfoGation Corp. v. Google LLC*, No. 6:20-cv-00366-ADA (W.D. Tex. Apr. 29, 2021), ECF No. 65 at 8 (recognizing that "the willingness of [a witness] to travel to Waco carries little weight, since he still resides within the [transferee district]").

Finally, the district court applied an incorrect standard by deeming this crucial factor "neutral" based on its view that Google had not shown that it

"*significantly* favors transfer."  Appx504 (emphasis added).  As this Court has already held, that mode of analysis "confuses [the movant's] burden of demonstrating that the transferee venue is clearly more convenient with the showing needed for a conclusion that a particular private or public interest factor favors transfer."  *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

The district court's analysis of this "most important" factor was clearly erroneous.  *Genentech*, 566 F.3d at 1343.  "[I]n light of the striking imbalance in the parties' respective presentations on this factor," *Juniper*, 2021 WL 4343309, at *3, the district court clearly "abused its discretion by not weighing the convenience-to-witnesses factor strongly in favor of transfer," *Sonos*, 2021 WL 4427899, at *5.

### 2.    Compulsory process for relevant witnesses is available in the NDCA, and not in the WDTX.

The compulsory process factor also favors transfer to the NDCA.  This factor weighs heavily in favor of transfer where, as here, "there is a substantial number of witnesses within the subpoena power of the [transferee district] and no witness who can be compelled to appear in the [transferor] district."  *Genentech*, 566 F.3d at 1345.[1]  A court may subpoena a person (a) within 100 miles of where a

---

[1] Because Ms. Hernandez has indicated her willingness to testify, *see* Appx406 ¶ 7, her presence within the potential subpoena power of the WDTX is irrelevant for this factor.

person resides or works, or (b) within the state where a person resides or works when the witness is a party, an officer of the party, or would not incur substantial expense to attend trial.  Fed. R. Civ. P. 45(c)(1).

As set forth above, material third-party witnesses are located in California, within the subpoena power of the NDCA but not the WDTX.  *Id.*  Both inventors who were deposed, including the first inventor on all three Patents-in-Suit, are in the Bay Area and can be subpoenaed by the NDCA but not by the WDTX.  *See supra* at 9.  Mr. Garcia, the Lattice employee who provided a declaration regarding Lattice's third-party production, is in San Jose and thus likewise under the NDCA's absolute subpoena power.  *See id*.  Employees at Qualcomm's San Diego headquarters are also under the NDCA's—but not the WDTX's—subpoena power.  *See supra* at 5, 8.  Finally, because SIT is a subsidiary controlled by Acacia entities and employees in Orange County, California, even relevant information about SIT could require subpoenaing Acacia employees.  The NDCA has subpoena power over those Acacia employees, while the WDTX does not.[2]

In contrast, SIT has not identified—and Google is not aware of—any third-

---

[2] The NDCA's potentially "usable subpoena power" for the subset of third-party witnesses located within the state of California but more than 100 miles from the NDCA, *Genentech*, 566 F.3d at 1345, while not absolute, *see* Fed. R. Civ. P. 45(c)(1), nevertheless outweighs the lack of *any* subpoena power over those witnesses in the WDTX.

party witnesses who would be subject to the compulsory process of the WDTX.

The district court swept aside all the foregoing evidence and deemed this factor neutral, hinging its analysis on the notion that Google was required to "establish that the witnesses it intends to call are unwilling to testify." Appx501. But this Court has repeatedly made clear that there is no such requirement. As the Court recently put it in *Jenam*, "where the movant has identified multiple third-party witnesses 'and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer *even without a showing of unwillingness for each witness*.'" *Jenam*, 2021 WL 4592280, at *7 n.* (quoting *Hulu*, 2021 WL 3278194, at *4) (emphasis added)); *see also, e.g.*, *HP*, 2018 WL 4692486, at *3 n.1 ("[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor"); *Pandora*, 2021 WL 4772805, at *3 (same); *Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The district court also mistakenly assumed that Google was relying in part on its own party witnesses to make its showing on the compulsory process factor. *See* Appx502. Rather, Google's showing was based only on the numerous third-party witnesses who would be subject to compulsory process in the NDCA if they

are unwilling to testify.  *See* Appx506.

Because the NDCA's ability "to hale relevant witnesses into Court" indisputably outweighs the WDTX's nonexistent ability to do the same, this factor "surely tips in favor of transfer."  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).  The district court's contrary reasoning again ran afoul of precedents from this Court squarely rejecting the same court's reasoning.

### 3.    Sources of proof are more readily accessible in the NDCA than the WDTX.

The relative ease of access to sources of proof is a "meaningful factor" in the convenience analysis.  *Volkswagen II*, 545 F.3d at 316.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Genentech*, 566 F.3d at 1345.

Here, the relevant sources of proof are in the NDCA or elsewhere in California, and are therefore more easily accessed from the NDCA than the WDTX.  Google keeps technical, financial, marketing, and licensing documents relevant to the accused Pixel Products at its Mountain View headquarters, where the employees who create and maintain them are located.  *See supra* at 6-7. Google is not aware of any relevant documents kept in the WDTX concerning the research, development, marketing, or financials for the Pixel Products.  *Id.*

Key third-party documentary evidence is likewise located in the NDCA or

elsewhere on the West Coast, given that two of the inventors live and work in the NDCA and invention-related documents are located at Lattice's Silicon Valley location in the NDCA or its Oregon headquarters, which is much closer to the NDCA than to the WDTX. *See supra* at 9. And to the extent that SIT has any relevant documentary evidence, it is also likely located in California with its Orange County-based parent entities. *See supra* at 8. In contrast, no relevant sources of proof are in the WDTX.

The district court's determination that this factor was nonetheless neutral rested on two clear legal errors. First, though the court gestured toward the case law holding that "the electronic availability of evidence does not outweigh the physical location of the evidence for this factor," it nevertheless gave controlling weight to the fact that "all discovery has been electronic thus far." Appx501. That was error. As this Court has frequently reiterated, under Fifth Circuit law, "while electronic storage of documents makes them more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof factor irrelevant." *Jenam*, 2021 WL 4592280, at *7 (citing *Volkswagen II*, 545 F.3d at 316); *see also NetScout*, 2021 WL 4771756, at *4 (same); *Juniper*, 2021 WL 4343309, at *6 (same).

Second, the district court relied on the fact that SIT's outside counsel in Dallas—in the Northern District of Texas, not the WDTX—possesses copies of

relevant non-electronic documents.  Appx501.  But the district court glossed over the fact that SIT's counsel has those documents only because they were produced by Google and other California entities in the EDTX Action that this Court held was brought in an improper forum.  The district court therefore impermissibly weighed "artifacts of . . . prior litigation" in its transfer analysis.  *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011).  This Court has long made clear that such "artifacts" have no role in the transfer inquiry.  *See, e.g.*, *In re Hoffmann-La Roche*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009) (where, "if not for [the Texas] litigation, it appears that the documents would have remained a source of proof in California, . . . the assertion that these documents are 'Texas' documents is a fiction which appears to have been created to manipulate the priority of venue"); *Verizon*, 635 F.3d at 561-62 (rejecting argument that "sources of proof in Marshall, Texas from . . . prior litigation in the Eastern District of Texas" counseled against transfer, because "these documents are artifacts of . . . prior litigation"); *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (plaintiff's transport of files to its Texas counsel's offices was "recent, ephemeral, and an artifact of litigation" and did not favor keeping the case in Texas).  A contrary rule—which would allow SIT to benefit from having initially brought suit in a forum that lacked venue by using the fruits of that improper litigation to influence later transfer determinations—would invite manipulation of § 1404(a).

25

Here, as in *Jenam*, the district court "provided no sound basis to disregard the [NDCA] as a convenient forum with respect to the sources of proof," and abused its discretion by categorizing the factor as "neutral." 2021 WL 4592280, at *7.

### 4. The district court clearly erred in determining that judicial economy considerations weighed against transfer.

The district court's analysis of the final private interest factor was also clearly erroneous. The court determined that this factor weighed against transfer solely because a "significant amount of discovery and litigation" had already been "completed in the EDTX action," and the parties and the district court had "agreed to reuse the discovery information" in the WDTX, whereas it was supposedly "not guaranteed that the NDCA would accept the claim constructions or allow the parties to reuse the discovery of the EDTX action." Appx505; *see* Appx373-82 (parties' agreement). That rationale lacks any basis. Google is prepared to enter an identical agreement to reuse discovery and the claim construction from the EDTX Action in the NDCA. Transfer in these circumstances thus wholly comports with principles of judicial economy, particularly given that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *Jenam*, 2021 WL 4592280, at *6 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013)). Because Google promptly filed its motion within a month and a half of SIT's initiation of this suit,

26

this is not a case "in which a movant seeking a transfer of venue has failed to act with reasonable promptness," *id.*, and the "other practical problems" factor does not weigh against transfer.

### B.     The Public Interest Factors Favor Transfer

The parties and the district court agreed that public interest factors (3) and (4)—the familiarity of the forum with the law and the avoidance of conflicts of law issues—have no bearing on this case.  *See* Appx507.  Taken together, the other two public factors support transfer.

#### 1.     NDCA's local interest in the case weighs heavily in favor of transfer.

The NDCA's robust interest in this controversy stands in stark contrast to the utter lack of local interest in the WDTX and weighs heavily in favor of transfer.  There is a strong local interest where "the cause of action calls into question the work and reputation of several individuals residing in or near that district." *Hoffmann-La Roche*, 587 F.3d at 1336.  Here, just as in *Samsung*, "[t]he relevant events leading to the infringement claims . . . took place largely in Northern California, and not at all in the [WDTX]." 2 F.4th at 1380.  Because it is "undisputed" that Google's engineers, managers, and employees who work on the accused Pixel Products are located in the NDCA, that district's local interest is strong.  *Id.*; *see Juniper*, 2021 WL 4343309, at *4 (where the "events forming the basis for [the plaintiff's] infringement claims occurred mainly in the [NDCA]" and

"none occurred in the [WDTX]," this was "sufficient to give the transferee venue a greater localized interest in the dispute"); *see also, e.g.*, *Jenam*, 2021 WL 4592280, at *5; *Tracfone*, 852 F. App'x at 540.

The district court recognized as much, but deemed the NDCA's interest to be counterbalanced by a comparable local interest in the WDTX in light of Google's Austin office, the "global reach of Google's products," and the fact that "alleged acts of infringement occur[ed]" in the WDTX, as well as because "SIT is a Texas LLC that was founded in the WDTX and maintains a registered address" there. Appx505. This Court has previously rejected each of these rationales.

First, Google's "generalized presence" in the WDTX, including its Austin office, "does not give [the WDTX] a special interest in the case" given the absence of "significant connections between [that] particular venue and *the events that gave rise to [the] suit*." *Jenam*, 2021 WL 4592280, at *5 (quoting *Apple*, 979 F.3d at 1345, and collecting cases). The district court's misplaced reliance on Google's generalized presence in the district "improperly conflate[d] the requirements for establishing venue under 28 U.S.C. § 1400(b) and the requirements for establishing transfer under § 1404(a)." *Sonos*, 2021 WL 4427899, at *6 (quoting *Apple*, 979 F.3d at 1346). Along the same lines, the global reach of Google's products plainly "does not give rise to a substantial interest in any single venue." *Hoffmann-La Roche*, 587 F.3d at 1338. The "fact that infringement is alleged in the" WDTX

28

likewise "gives that venue no more of a local interest than the [NDCA] or any other venue." *Samsung*, 2 F.4th at 1380.

Finally, the fact that SIT "is incorporated in Texas" does not change the analysis, given its scant connections to the state—which consist solely of a single office that is not even "located in the Western District." *Jenam*, 2021 WL 4592280, at *6. SIT's purported connections to Texas are also entitled to little weight because, like the plaintiff in *Jenam*, SIT is a patent-holding subsidiary that is wholly owned and controlled by parent entities located in California. *Id*. at *3. As this Court's precedents make plain, it was a clear abuse of discretion to conclude that the WDTX's interest—which is indistinguishable from the interest of any other district—is equal in weight to the NDCA's substantial local interest.

> **2.  The district court gave too much weight to the court congestion factor, which does not counsel against transfer in any event.**

To the extent that the "administrative difficulties flowing from court congestion" factor weighs in any direction, it favors transfer. Google cited statistics below indicating a shorter median time to jury trial in patent cases in the NDCA compared with the WDTX over the last decade, *see* Appx372, and the WDTX's patent docket continues to become more congested, with a recent report

indicating that 25% of all patent cases filed in 2021 have been filed in the WDTX.[3]

The district court's contrary reasoning, relying primarily on anecdotal evidence of

the timing for a handful of trials in that court, does not withstand scrutiny.[4] *See*

Appx506-07. And even crediting the district court's belief that trial timing data

could favor the WDTX, this Court has repeatedly recognized that any statistical

differences in court congestion between the WDTX and the NDCA are not

sufficient to weigh against transfer. *See, e.g.*, *Juniper*, 2021 WL 4343309, at *6

("We have noted that the Western District of Texas and the Northern District of

California show no significant differences in caseload or time-to-trial statistics.");

*Apple*, 979 F.3d at 1343 ("NDCA and WDTX have historically had comparable

times to trial for civil cases").

In any event, the court congestion factor is ultimately immaterial in the

circumstances of this case. Because this factor is "the most speculative," this

Court has made clear that it "should not alone outweigh all of th[e] other factors."

---

[3] *See* Unified Patents: 2021 Patent Dispute Report (July 1, 2021), available at https://www.unifiedpatents.com/insights/q2-2021-patent-dispute-report.

[4] To the extent that the district court relied on a COVID-19-related backlog in the NDCA to speculate about court congestion, the district court itself explained in another decision that, "given how rapidly [COVID-19-related] issues evolve or dissolve" and that "the issues presented by the novel COVID-19 crisis . . . are not confined to one district or the other," such considerations should not be relied upon in the transfer analysis. *SITO Mobile R&D IP v. Hulu, LLC*, No. 6-20-CV-00472-ADA, 2021 WL 1166772, at *7 (W.D. Tex. Mar. 24, 2021), *vacated on other grounds*, *Hulu*, 2021 WL 3278194.

*Genentech*, 566 F.3d at 1347; *see also Sonos*, 2021 WL 4427899, at *7 (court

congestion cannot change the outcome "when other relevant factors weigh in favor

of transfer or are neutral" (citing *Genentech*, 566 F.3d at 1347)); *Apple*, 979 F.3d at

1344 n.5 (same); *NetScout*, 2021 WL 4771756, at *5 (same).  The factor takes on

even less importance where, as here, the plaintiff is a non-practicing entity.[5]  In

such cases, the "prospective speed with which [a] case might be brought to trial" is

not "of particular significance" because a plaintiff that does not practice the patent

"is not in need of a quick resolution of [a] case because," for example, "its position

in the market is threatened." *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed.

Cir. 2014); *accord Juniper*, 2021 WL 4343309, at *7.  Thus, because numerous

critical factors weigh heavily in favor of transfer for the reasons set forth above,

transfer is warranted here regardless of whether "a more rapid disposition of the

case . . . might be available" in the WDTX.  *Samsung*, 2 F.4th at 1381.

### C.    The NDCA Is Clearly More Convenient Than The WDTX

When the private and public interest factors are properly weighed, the

NDCA is clearly more convenient than the WDTX.  Four of the factors strongly

favor transfer:  the convenience and cost of attendance of witnesses, the

---

[5] The district court made a notable factual error when it stated that "SIT manufacture[s] telecommunication equipment."  Appx497.  It is undisputed that SIT is a patent assertion entity that does not practice the Patents-in-Suit.  *See supra* at 4.

availability of compulsory process, the relative ease of access to sources of proof, and the balance of local interests. The remaining factors either weigh slightly in favor of transfer, in the case of court congestion, or are neutral, in the case of the "other practical considerations" factor and the non-contested public interest factors. There is, in short, "a stark contrast in relevance, convenience, and fairness between the two venues," *Hoffmann-La Roche*, 587 F.3d at 1336, leaving no doubt that "the center of gravity of this action is clearly in the transferee district," *Sonos*, 2021 WL 4427899, at *7. Indeed, as with other recent transfer denials by the WDTX that have required this Court's intervention, the proper disposition of this case "is largely dictated by the disposition" of several others this Court has already decided. *In re Juniper Networks*, 2021 WL 4343309, at *7. Based on those precedents, a writ directing transfer is appropriate.

## CONCLUSION

The Court should issue a writ of mandamus and direct the district court to transfer the case to the U.S. District Court for the NDCA.

Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Bradley N. Garcia*
   Bradley N. Garcia
   *Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Federal

Rule of Appellate Procedure 21(d)(1).  The body of the petition contains 7510

words, excluding the portions exempted by rule.

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally

spaced typeface using Microsoft® Word and 14-point Times New Roman type.


Dated:  October 15, 2021                    */s/ Bradley N. Garcia*_____
                                            Bradley N. Garcia
                                            *Counsel for Petitioner*

## PROOF OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Federal Circuit by using the

appellate CM/ECF system on October 15, 2021.

A copy of the foregoing was served upon the following counsel of record

and district court via an express carrier:

Jeffrey Ray Bragalone
Daniel F. Olejko
Terry A. Saad
Bragalone Olejko Saad PC
2200 Ross Avenue
Suite 4600W
Dallas, TX 75201
Telephone:  (214) 785-6670

Jack Wesley Hill
Ward Smith & Hill, PLLC
1507 Bill Owens Pkwy
Longview, TX 75604
Telephone:  (903) 757-6400

Hon. Alan D Albright
United States District Court for the
Western District of Texas
800 Franklin Avenue, Room 301,
Waco, Texas 76701
Telephone:  (254) 750-1510

I declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct.

Dated:  October 15, 2021

/s/ Bradley N. Garcia
Bradley N. Garcia
*Counsel for Petitioner*